UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARY HUDSON | CIVIL ACTION |
| VERSUS | |
| LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION, ET AL. | NO. 20-00551-BAJ-RLB |

### RULING AND ORDER

This is an employment discrimination case. Plaintiff alleges that Defendants Louisiana Department of Education (LDOE),[1] Louisiana State Board of Elementary and Secondary Education (BESE), and Principal Melanie Brenckle terminated her employment based on her age (over 40 years old), retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and retaliated against her for whistleblowing.[2] (*See* Doc. 1-1 at pp. 6–10; Doc. 26 at p. 4).

---

[1] At the time of filing, Plaintiff's claims against the LDOE were directed at the Louisiana School for the Visually Impaired (LSVI) and the Louisiana Special School District (SSD). In Defendants' Memorandum supporting this Motion, Defendants argue that the LSVI and the SSD are not juridical entities and cannot be sued. (*See* Doc. 20 at pp. 8–10). Recognizing her mistake, Plaintiff filed a Motion asking the Court to substitute the LDOE as the proper Defendant for her claims against the LSVI and the SSD. The Magistrate Judge granted her motion on October 25, 2022.

[2] Initially, Plaintiff's claims were more wide-ranging. Now, however, Plaintiff concedes that "the Parties have narrowed the issues in her case to three main claims: 1) she was discriminated against based on her age when she was terminated; 2) she was retaliated against because she complained to the EEOC of her age discrimination; and 3) she was retaliated against because she blew the whistle on the ethical and criminal culture

1

Now before the Court is a **Motion for Summary Judgment (Doc. 17)** by all Defendants, which argues that Plaintiff's action must be dismissed because her claims are barred by sovereign immunity, qualified immunity, and fail as a matter of law. (*See* Doc. 20 at pp. 4, 5, 11, 12). Plaintiff opposes Defendants' Motion.[3] (Doc. 26). For the reasons stated herein, the Defendants' Motion will be granted.

I. BACKGROUND

A. Summary Judgment Evidence

The following facts are drawn from the Defendants' Statement Of Material Facts In Support Of Motion For Summary Judgment (Doc. 17-9, "DEF SOF"), Plaintiff's Statement Of Material Facts Precluding Summary Judgment (Doc. 22-3, "Hudson SOF"), and the record evidence submitted in support of these pleadings.

i. The Parties

Plaintiff is over the age of 40. (DEF SOF ¶ 17). Principal Brenckle is under the age of 40. (*See* Doc. 31 at p. 5). The Louisiana School for the Visually Impaired (LSVI) is one of three schools operated by the Louisiana Special School District (SSD). (DEF SOF ¶ 1). SSD provides Human Resources services to LSVI and oversees LSVI's hiring. (DEF SOF ¶¶ 1, 12, 21). BESE is the administrative body for all Louisiana public and elementary schools and provides administrative oversight for LSVI. (DEF

---

predominating Louisiana's Special School District. Plaintiff withdraws her retaliation claim under Title 42 (Ethics Whistleblower)." (*See* Doc. 26 at p. 4).

[3] As set forth in the Defendant's Reply, Plaintiff filed her Opposition one hour past the filing deadline. (*See* Doc. 29 at p. 1–2). Nonetheless, the Court will exercise its discretion to consider her arguments.

SOF ¶ 5). The Louisiana Department of Education (LDOE) operates LSVI and SSD and provides their funding. (DEF SOF ¶¶ 3, 4).

### ii. Plaintiff's experiences at LSVI

In 2018, LSVI posted a job opening for the Assistant Principal position, but it received few applications from qualified applicants. (DEF SOF ¶ 11). To assist with the search, SSD compiled a list of possible candidates that included Plaintiff's name. (DEF SOF ¶¶ 12, 13). Principal Brenckle and Instructional Coach ("IC") Susan Covington interviewed Plaintiff and recommended to SSD's Assistant Superintendent ("AS"), Meredith Jordan, that Plaintiff be hired as Assistant Principal. (DEF SOF ¶¶ 16, 23). In December 2018, SSD sent Plaintiff a conditional employment offer, and in January 2019, formally hired her. (DEF SOF ¶¶ 21, 23).

In February 2019, one month after she was hired, Plaintiff began complaining to Principal Brenckle that "she was given busy work while [Principal Brenckle and IC Covington] ran the school." (DEF SOF ¶ 33). For example, Plaintiff claimed that Principal Brenckle tasked her with inventory orders while IC Covington helped with disciplinary, instructional, and curriculum decisions. (DEF SOF ¶ 128).

For Principal Brenckle's part, she believed Plaintiff did not value the work she was given or the importance of the work to LSVI. (DEF SOF ¶ 37). She also disliked that Plaintiff disagreed with her in front of LSVI staff members, because she wanted LSVI's administration to show a "unified front." (DEF SOF ¶ 44).

In May 2019, Plaintiff and Principal Brenckle initiated talks to determine if

Plaintiff was a good fit at LSVI. (DEF SOF ¶ 55). During one conversation, Principal Brenckle expressed that if Plaintiff disliked her as a leader and if Plaintiff was unhappy working at LSVI, then LSVI might not be a good fit. *See id.* Plaintiff reassured Principal Brenckle that she intended to continue working at LSVI. However, the difficulties persisted. *See id.*

### iii. Incident between Plaintiff and IC Covington

On May 29, 2019, Plaintiff, Principal Brenckle, and IC Covington interviewed a candidate for a teaching position. During the interview, Plaintiff remarked to the applicant that they should not be nervous because "we have even hired people who have less training than you—[people with] alternative certifications or something." (DEF SOF ¶ 58). After the interview, IC Covington admonished Plaintiff because she did not think her comment was professional in an interview, and Principal Brenckle agreed. (DEF SOF ¶ 60, 61). As the conversation continued, Plaintiff perceived it as a "lecture…on trust, respect, and being a team member." (DEF SOF ¶ 63). Plaintiff complained to Principal Brenckle that she did not feel like part of a team and felt disrespected. (DEF SOF ¶ 64). She also explained that she wanted to be a team member, but "drew the line on lying, covering things up, and keeping secrets." (DEF SOF ¶ 65). Principal Brenckle requested specific examples of this behavior, but Plaintiff refused to provide any such details. (DEF SOF ¶ 66).[4]

Also during the meeting, Plaintiff questioned why IC Covington was still

---

[4] Later, Plaintiff provided such examples to SSD leaders, as set forth below.

4

present for the discussion. (DEF SOF ¶ 67). IC Covington answered that she was giving Plaintiff feedback, and Plaintiff retorted, "keep it to yourself." (DEF SOF ¶ 68). The situation escalated between Plaintiff and IC Covington, resulting in IC Covington alleging that she felt threatened by Plaintiff. (DEF SOF ¶ 69). Plaintiff denies acting in a threatening way. (DEF SOF ¶ 70). Principal Brenckle ended the meeting, and shortly thereafter, she informed Assistant Superintendent ("AS") Jordan about what transpired. (DEF SOF ¶ 73, 74). AS Jordan instructed Principal Brenckle to write a summary of the incident and any other previous incidents with Plaintiff. (DEF SOF ¶ 75). IC Covington also wrote a statement about the incident and submitted her complaint to SSD's Human Resources Director ("HRD") Julie Alcorn. (DEF SOF ¶¶ 79–83).

On May 30, 2019, Plaintiff contacted AS Jordan to request a meeting, and AS Jordan scheduled the meeting with Plaintiff and invited HRD Alcorn and SSD's Director of Operations ("DOO") Audrey Gaultier to attend. (DEF SOF ¶ 87). During this meeting, Plaintiff informed the group of the "lies and cover-ups" she alluded to in her conversation with Principal Brenckle and IC Covington. (DEF SOF ¶ 89). However, she did not mention concerns about age discrimination or retaliation during the meeting. (DEF SOF ¶¶ 91, 92). The group instructed Plaintiff to write a report about the May 29 incident and the criminal and unethical activity she allegedly observed at LSVI. (DEF SOF ¶ 90). They also instructed her to cease interaction with IC Covington. (*See* Doc. 17-2 at p. 43).

5

### iv. Alleged criminal and unethical activity at LSVI

In her report, Plaintiff identified several activities and examples of behavior at LSVI that she considered to be forms of "lying," "covering things up," and "keeping secrets." (DEF SOF ¶ 65). The Court will only mention the behavior relevant to Plaintiff's claims.

First, Plaintiff accused Principal Brenckle of instructing her to tell a teacher to change a student's grade. (*See* Doc. 17-2 at p. 181). Second, Plaintiff alleged that Principal Brenckle reprimanded her when she reported a student's suicide threat to a SSD official. (DEF SOF ¶ 120). Third, Plaintiff described "payroll inconsistencies" that she and another LSVI employee had observed. (DEF SOF ¶ 121). Finally, Plaintiff claimed that her "authority to act as an administrator was undermined and thwarted." (DEF SOF ¶ 126). She also wrote that she felt disrespected and undermined when Principal Brenckle tasked her with ordering office supplies but tasked IC Covington with making disciplinary, instructional, and curricular decisions. (DEF SOF ¶ 128).

### v. Plaintiff's initial inquiry to the EEOC

On June 3, 2019, Plaintiff submitted her report to AS Jordan, HRD Alcorn, and DOO Gaultier. (DEF SOF ¶ 94). She also submitted an online inquiry to the EEOC alleging retaliation. (*See* Doc. 26-2 at pp. 12, 21–25). In her inquiry, Plaintiff alleged that she had "uncovered various illegal and dysfunctional activities at work and [was] being targeted for dismissal." (*See* Doc. 26-2 at p. 23). She further alleged, "a false

6

charge of threat was made against me as a way to target me for termination." Immediately after submitting her inquiry, Plaintiff emailed AS Jordan, HRD Alcorn, and DOO Gaultier and wrote:

> This morning I initiated a complaint with the EEOC. They will be contacting Mrs. Alcorn for verification of employment. I did this because I became aware that (false) statements were being solicited from subordinates who had not initiated complaints on their own. While I appreciate your trust in me to provide truthful statements and our open and friendly meeting, I do not trust that my rights are being protected at the school building level, so I contacted EEOC to protect my job, my professional reputation and myself from the apparent retaliation that is underway.

(DEF SOF ¶142). Later that same day, AS Jordan replied and wrote, "Ms. Hudson, Thank you for informing me of your decision." (*See* Doc. 17-2 at p. 215). At this point, Principal Brenckle was not informed that Plaintiff had contacted the EEOC. (DEF SOF ¶ 146–47).

### vi. Incident between Plaintiff and a LSVI teacher

On June 4, 2019, Vicki McCarroll, a LSVI teacher, submitted a statement accusing Plaintiff of bullying her over the course of the semester. (*See* Doc. 17-2 at p. 218). The statement also described an incident between Plaintiff and McCaroll that had occurred prior to the May 29th incident between Plaintiff and IC Covington.[5] (*See* Doc. 17-1 at p. 27).

When asked about the incident during her deposition, Plaintiff accused IC Covington and Principal Brenckle of "soliciting" the written statement from

---

[5] The Parties did not provide the specific date of this incident.

McCaroll. (*See* Doc. 17-2 at p. 41). Plaintiff alleges that on the morning of June 3, she saw IC Covington "going in and out" of McCaroll's classroom. *See id.* When Plaintiff went to the printer to pick up copies of documents, McCaroll's statement was also there. *See id.* This sequence of events was the impetus for Plaintiff's June 3rd inquiry to the EEOC and the source of her allegation that false charges were being solicited against her with the purpose of targeting her for termination. (*See* Doc. 17-2 at pp. 42–43). Plaintiff believed that after IC Covington made her complaint about the May 29th incident, she and Principal Brenckle were trying to "pull other stuff up." *See id.*

### vii. Plaintiff's termination

From approximately the end of June 2019 to mid-July 2019, Plaintiff went on summer break. While she was away, Principal Brenckle, AS Jordan, and Jamie Wong, LDOE's Special Education Director, met to discuss anticipated budget cuts for the upcoming year and the *possible* need to eliminate positions at LSVI. (DEF SOF ¶ 153). At this time, Principal Brenckle expressed she "did not feel like the assistant principal position was currently being served to [the] best benefit [of] the school, and [she] felt like it would be a better use of maintaining teacher positions to work directly with the students." *See id.* Principal Brenckle, AS Jordan, and Director Wong collectively decided to eliminate Plaintiff's position and a then-vacant teacher position. (*See* Doc. 39-1 at pp. 122, 126). When the group made their decision, they did not have specific information that LSVI's budget was in fact being cut. (*See* Doc.

39-1 at p. 124). Rather, the decision was made in anticipation of budget cuts and a reduction in force. *See id.*

On July 15, 2019, Plaintiff returned to LSVI and "thought that things were going to get better." (*See* Doc. 17-2 at p. 43). However, Plaintiff claims that while other leaders of LSVI were meeting to prepare for the fall semester, she was tasked with preparing door signs. *See id.* On July 16, 2019, Plaintiff complained to HRD Alcorn about her treatment. Shortly thereafter, HRD Alcorn emailed Director Wong, and the two had the following exchange:

> **JULIE ALCORN:** Good morning. Will you be at LSDVI today, if so I have a few things that need your signature.
>
> **JAMIE WONG:** Possibly this afternoon. Is it time sensitive?
>
> **JULIE ALCORN:** Mary Hudson (LSVI Assistant Principal) [termination] letter. I was preparing an email to you and [AS Jordan] informing you that Dr. Hudson just came to my office stating that Melanie is mistreating her the same way as she did before she left from summer break, not including her in any decision making, etc. I can change the [termination] letter date to tomorrow if you want.
>
> **JAMIE WONG:** Can this wait until Thursday?
>
> **JULIE ALCORN:** Yes, of course. I [will] talk with [AS Jordan] so she can inform [Principal Brenckle].

(*See* Doc. 17-2 at pp. 223–24).

On July 18, 2019, Plaintiff was terminated. (DEF SOF ¶ 157). Principal Brenckle, HRD Alcorn, and a LSVI security officer came into Plaintiff's office and read the termination letter to her:

Dear Ms. Hudson,

9

> This is to inform you that you are being separated from your position as Assistant Principal at the Special School District/Louisiana School for the Deaf and Visually Impaired (LSDVI) effective July 18, 2019.
>
> ....

(*See* Doc. 17-2 at p. 43). When Plaintiff questioned why she was being terminated, Principal Brenckle and HRD Alcorn did not give her a specific answer. According to Plaintiff, they did not inform her she was being terminated due to anticipated budget cuts. (*See* Doc. 17-2 at p. 44). However, they assured Plaintiff it was not for a performance-related reason. (DEF SOF ¶ 159). To date, Plaintiff's former position at LSVI has not been reinstated. (DEF SOF ¶ 155).

### viii. Plaintiff's EEOC Charge of Discrimination

On August 23, 2019, Plaintiff filed her first Charge of Discrimination with the EEOC alleging age discrimination. (*See* Doc. 26-2 at p. 38). She did not make a retaliation claim in this first filing. *See id.* In her Charge, Plaintiff wrote:

> I began my employment with Louisiana School for the Visually Impaired on January 24, 2019 as Assistant Principal, earning approximately $69,000.00 per year. Around February 18, 2019, the principal, Ms. Melanie Brenckle (age 32) started excluding me from assignments and duties that should [sic] I should have been included on. These assignments included grading policy meetings as well as developing the school improvement plan. Instead, I was assigned to make door signs. On July 30, 2019, I was discharged. The company employees between 15 to 100 employees. No reason was given for the action taken against me. I have been discriminated against because of my age (57 years) in violation of the Age Discrimination on [sic] Employment Act of 1967.

(*See* Doc. 26-2 at p. 38). On February 4, 2020, Plaintiff amended her Charge of Discrimination and added:

10

> On Monday, June 3, 2019, I sent a complaint email to the attention of Meredith Jordan (not in PAG), Asst. Supt; Audrey Gauthier (not in PAG); and Julie Alcorn (late 60's), Director of Human Resources. In the email I informed them that I had "initiated a complaint with the EEOC...to protect myself from retaliation" that I believed was already underway.

(*See* Doc. 26-2 at p. 49). The EEOC investigated Plaintiff's allegations of age discrimination and retaliation and ultimately was "unable to conclude that the information obtained establishe[d] violations of the statutes." (*See* Doc. 26-2 at p. 44). On October 7, 2020, the EEOC dismissed Plaintiff's Charge and issued a Right to Sue letter. *See id.*

### B. Procedural History

Plaintiff initiated this action on July 16, 2020 in the 19th Judicial District Court of the State of Louisiana, alleging, *inter alia*, that Defendants terminated her based on her age, retaliated against her for filing a charge of discrimination with the EEOC, and retaliated against her for whistleblowing, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, the Louisiana Employment Discrimination Law (LEDL), La. R. S. 23:301, *et. seq.*, and the Louisiana Whistleblower Statute (LWS), La. R.S. 23:967. (*See* Doc. 1-1 at pp. 6–10; Doc. 26 at p. 4). Defendants removed the case to this Court on August 26, 2020, and now move for summary judgment. (Doc. 1; Doc. 17). Defendants argue that Plaintiff's action must be dismissed because her claims are barred by sovereign immunity and fail as a matter of law. (*See* Doc. 20 at pp. 4–5, 12, 31). Plaintiff opposes Defendants' Motion. (Doc. 27).

11

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56 provides that, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether the movant is entitled to judgment as a matter of law, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in their favor. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). After a party moves for summary judgment, the non-movant must set forth specific facts showing there is genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Minnis v. Bd. Of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 873 (M.D. La. 2014). Rather, the Court simply asks whether the evidence in the record is sufficient for a reasonable jury, "drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). If the answer is yes, the motion for summary judgment must be denied. *See id.*

On the other hand, the non-movant cannot satisfy their evidentiary burden by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the non-movant "fails to make a showing

sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III.  DISCUSSION

#### A.  ADEA Claims

As their first defense to Plaintiff's ADEA claims, Defendants assert sovereign immunity. (*See* Doc. 20 at p. 4). The Eleventh Amendment to the United States Constitution bars a State from being sued in federal court by its own citizens, citizens of other States, or foreign nations. *See* U.S. CONST. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, ... the Amendment's applicability [has been extended] to suits by citizens against their own States." *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307 (5th Cir. 2001) (*citing Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)). As state agencies, BESE and LDOE also "enjoy sovereign immunity" against exercises of federal jurisdiction. *Moore v. Louisiana Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963–64 (5th Cir. 2014). The Eleventh Amendment bar to suits by private citizens against a state in federal court is also extended to Principal Brenckle because she is sued in her official capacity.[6] *See K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

---

[6] Plaintiff also sued Principal Brenckle in her individual capacity pursuant to 42 U.S.C. § 1983 and Defendant moved for summary judgment as to that claim as well. (*See* Doc. 20 at pp. 40–49). However, Plaintiff failed to brief, or even address, her § 1983 claim against Principal Brenckle in her Opposition Memorandum. "[T]his Court has repeatedly

13

However, in *Myers ex rel. Benzing v. Texas*, the Fifth Circuit held that when the State removes a case to federal court, it "voluntarily invoke[s] the jurisdiction of the federal courts and waive[s] its immunity from suit in federal court." 410 F.3d 236, 255 (5th Cir. 2005) (*citing Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002)). Accordingly, when Defendants removed Plaintiff's suit to this Court, they voluntarily waived their immunity from *suit* in federal court. Whether Defendants retain a separate immunity from *liability* is determined by Louisiana law. *See Myers*, 410 F.3d at 255.

"Under Louisiana law, two provisions of the Louisiana constitution govern whether the [S]tate has waived sovereign immunity." *Pegues v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll., LSU Sch. of Dentistry & Fac. Dental Prac.*, No. CV 18-2407, 2019 WL 1544366 *4 (E.D. La. Apr. 9, 2019) (*citing Reed-Salsberry v. State Through the Dep't of Pub. Safety & Corr., Youth Servs., Off. of Juv. Just.*, 51,104 (La. App. 2 Cir. 2/15/17), 216 So. 3d 226, 229. Article 12, § 10(A) provides that neither the State nor a state agency is immune from suit and liability *in contract or for injury to person or property*. LA. CONST. art. 12, § 10(A) (emphasis added). But article 1, § 26 of the Louisiana Constitution states that the people of Louisiana "have

---

admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf." *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, --- F.Supp.3d ----, 2023 WL 143171, at *17, n.1 (M.D. La. Jan. 10, 2023) (Jackson, J.). Having failed to meaningfully respond to Defendants' summary judgment arguments, the Court determines that Plaintiff has voluntarily abandoned her § 1983 claim against Principal Brenckle.

the sole and exclusive right of governing themselves as a free and sovereign state," and that this right cannot be delegated to Congress. LA. CONST. art. 1, § 26.

In *Holliday v. Board of Supervisors of LSU Agricultural and Mechanical College*, the Louisiana Supreme Court analyzed these sections of the Louisiana Constitution and held that the State had not waived its immunity from liability under the Family and Medical Leave Act. 2014-0585 (La. 10/15/14), 149 So. 3d 227, 228–29. The *Holliday* court reasoned that article 12, § 10(A) did not "waive or cede Louisiana's sovereign immunity in the federal system to unlimited Congressional power over State contracts." *Id.*

Relying on *Holliday*, the Second Circuit Court of Appeal of Louisiana has held that the State does not waive its sovereign immunity for purposes of the Americans with Disabilities Act merely because it adopts provisions of the federal statute. *See generally Reed-Salsberry*, 216 So. 3d 226, 230. Louisiana state courts have yet to consider whether the State has waived its sovereign immunity for purposes of the ADEA. Nevertheless, persuasive authority from the U.S. Court of Appeals for the Fifth Circuit suggests that, if put to the test, Louisiana state courts would hold that the State has not waived its sovereign immunity as to the ADEA:

> The Louisiana Supreme Court has not answered the ADA question specifically, but it has ruled that the state has not waived its immunity for FMLA or unjust enrichment claims. *The pattern of the court, therefore, is to limit the scope of the waiver [of sovereign immunity] to traditional contract and tort suits.*

15

*Fletcher v. Louisiana Dep't of Transportation & Dev.*, 19 F.4th 815, 818 (5th Cir. 2021) (emphasis added). Heeding this authority, the Court determines that Plaintiff's ADEA claims are also barred by the Eleventh Amendment.

Plaintiff, however, argues that by receiving "federal funds under Title XI [sic] and under the Individuals with Disabilities Education Act [IDEA]…Defendants have waived their Eleventh Amendment immunity, and they cannot now avoid the consequences of their actions for their violations of the ADEA or § 1983." (*See* Doc. 26 at p. 18). While it is true that a State *may* waive its immunity by voluntarily participating in federal spending programs, merely receiving federal funds does not establish a valid waiver. *See Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 379 (M.D. La. 2012). "Rather, such a waiver must be expressed in the language of the statute." *Id.*

Here, Plaintiff seeks to extend the waivers of sovereign immunity embedded in Title IX and IDEA to the ADEA and § 1983. (*See* Doc. 26 at p. 18) (*citing* 42 U.S.C. § 2000d-7; 20 U.S.C. § 1403). But this is inconsistent with the requirement that a waiver be *expressed in the language of the statute.* Absent a statutory basis for doing so, Title IX and IDEA's waivers of sovereign immunity cannot be extended to ADEA and § 1983 claims. Consequently, the Court concludes that while Defendants have waived their immunity from *suit* in this matter, pursuant to Louisiana law, they have not waived their immunity from *liability*. In other words, by waiving their immunity to suit, Defendants have waived any *jurisdictional* attacks on Plaintiff's claims. But

16

Defendants have not waived their immunity from liability for the harms they've allegedly inflicted on Plaintiff.

Defendants' immunity "serves as a bar to recovery of damages and injunctive relief" from claims asserted under ADEA. *Fletcher v. Louisiana Dep't of Transporation & Dev.*, No. CV 19-00593-BAJ-RLB, 2020 WL 6588593 *4 (M.D. La. Nov. 10, 2020), *aff'd sub nom Fletcher*, 19 F.4th at 815. Accordingly, Plaintiff's ADEA claims for age-based discrimination and retaliation must be dismissed with prejudice. *See Harris v. Louisiana Off. of Juv. Just.*, No. CV 18-13356, 2019 WL 2617175 *4 (E.D. La. June 26, 2019) ("The Court's dismissal of plaintiffs federal claims on the basis of defendant's immunity from liability is not jurisdictional and instead constitutes an adjudication on the merits.").

### B. State law claims

Plaintiff's ADEA claims were her only federal claims. Having now dismissed these claims, there is no basis to exercise federal question jurisdiction here, and the Court must decide whether to retain jurisdiction over Plaintiffs' pendant state law claims. In making this determination, the Court "look[s] to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).

Here, the relevant factors favor dismissing Plaintiffs state law claims. These remaining claims raise issues best left to Louisiana state courts—specifically, the scope of protection afforded by the Louisiana employment and whistleblower statutes—and obviously predominate over the nonexistent federal claims. *See Enochs*, 641 F.3d at 159. Moreover, fairness, and comity are each served by allowing Louisiana's courts to address Plaintiffs' state law claims in the first instance. There is no indication that either party will be prejudiced by a return to state court. Furthermore, "comity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction." *Enochs*, 641 F.3d at 160. Thus, taken together, the statutory and common law factors weigh in favor of dismissing Plaintiff's pendant claims. Accordingly, the Court will follow the "general rule" and dismiss all of Plaintiffs' state law claims, without prejudice. *Bass*, 180 F.3d at 246.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Doc. 20)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's age-based discrimination claim under ADEA is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's retaliation claim under ADEA is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, because all federal claims have been dismissed, the Court will decline to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims, which are hereby **DISMISSED WITHOUT PREJUDICE.**

Judgment shall issue separately.

Baton Rouge, Louisiana, this 31st day of March, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**